[Cite as *State v. Meeks*, 2022-Ohio-6.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 21 CAA 20 0010 |
| WILLIAM M. MEEKS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Delaware County Court
of Common Pleas, Case No. 20 CRI 08
0516

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 3, 2022

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

MELISSA A. SCHIFFEL                          ADDISON M. SPRIGGS
Delaware County Prosecuting Attorney         Assistant Ohio Public Defender
                                             250 East Broad Street, Suite #1400
CHRISTOPHER E. BALLARD                        Columbus, Ohio 43215
Assistant Prosecuting Attorney
145 N. Union Street, 3rd Floor
Delaware, Ohio 43015

*Hoffman, P.J.*

{¶1}   Defendant-appellant William Meeks appeals his convictions and sentence entered by the Delaware County Court of Common Pleas, on ten counts of rape and three counts of gross sexual imposition, following a jury trial.   Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On August 15, 2019, the Delaware County Grand Jury indicted Appellant, in case no. 19 CR I 08 0580, on three counts of rape, in violation of R.C. 2907.02(A)(1)(b); three counts of rape, in violation of R.C. 2907.02(A)(2); one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4); and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1).   All charges involved Jane Doe, the daughter of his long-term girlfriend with whom he lived.

{¶3}   On September 29, 2019, defense counsel filed a motion to suppress which the trial court scheduled for hearing on November 8, 2019.   On November 6, 2019, defense counsel filed a motion requesting a competency evaluation.   The trial court continued the suppression hearing and scheduled both motions for hearing on February 7, 2020.  The trial court sua sponte continued the hearing until March 16, 2020.  The trial court, again on its own motion, continued the matter until April 29, 2020.   On April 28, 2020, defense counsel and the state filed a joint motion for a continuance until May 13, 2020, advising the trial court they were having difficulty playing the relevant recordings via Zoom video conferencing, which was in place due to the Covid-19 pandemic.   The parties acknowledged "speedy trial remains tolled due to [Appellant's] pending motions [sic] for competency evaluation and motions [sic] to suppress."  April 28, 2020 Motion to Continue at 2, unpaginated.

{¶4} The trial court conducted the hearing on the motions on May 13, 2020, and found Appellant competent to stand trial. The parties filed post-hearing briefs on the suppression issue. Via Judgment Entry filed July 9, 2020, the trial court granted, in part, Appellant's motion to suppress. The trial court scheduled the matter for jury trial on August 4, 2020.

{¶5} Upon motion of Appellant, the trial court continued the trial until September 29, 2020. The state moved to dismiss case no. 19 CR I 08 0580, due to the filing of a superseding indictment on August 13, 2020, in case no. 20 CR I 08 0516. The indictment in case no. 20 CR I 080 0516 charged Appellant with three counts of rape, in violation of R.C. 2907.02(A)(1)(b); three counts of rape, in violation of R.C. 2907.02(A)(2); one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4); and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(1), relating to Jane Doe; one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), relating to Adam Doe, one of Jane Doe's brothers; and four counts of rape, in violation of R.C. 2907.02(A)(1)(b); and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), relating to John Doe, Jane Doe's other brother.

{¶6} On September 1, 2020, Appellant filed a motion to continue the September 29, 2020 trial. The trial court granted the continuance and rescheduled the trial until October 27, 2020. On October 15, 2020, the state filed four motions in limine. On October 20, 2020, Appellant filed three motions in limine and a motion to exclude any evidence of other acts or wrongs. Appellant filed a fourth motion in limine on October 21, 2020. On October 23, 2020, Appellant filed motions to determine the competency of Jane Doe,

Adam Doe, and John Doe.  Appellant also filed a motion to continue the October 27, 2020 trial.  The trial court granted the motion and rescheduled the trial until January 12, 2021.

{¶7}　Prior to the commencement of trial, the trial court discussed the admission of prior consistent statements with defense counsel as follows:

THE COURT: Okay. I want to, I guess, nail down a little bit about defense's position here because I think it has to do somewhat with some of the evidence and whether it comes in and when it comes in.

In terms of defense position at this point, trial strategy, is your position going to be that the allegations are false and fabricated; or is there a different defense position that you're going to afford?

MS. SMITH [DEFENSE COUNSEL]: There's a different defense, Your Honor.

THE COURT: Go ahead.

MS. SMITH: No.  I'm definitely not going to call [Jane Doe] a liar.  I'm not going to challenge, you know, what she said and call them lies.  Our defense is basically the State has the burden of proof, proof beyond a reasonable doubt, and that's my argument.

THE COURT: So you do not intend in your opening or on cross-examination of the alleged victims to allege that this is a fabricated story or that there's a motive to fabricate or that this is all made up?

MS. SMITH:  I am not going to on cross challenge [Jane Doe], that this is fabrication, that she made this up.  As far as [Adam Doe] and [John

Doe] are concerned, I will only go – I will only address, I guess, the timing of their allegations.

THE COURT: And when you say timing, explain to me what you mean.

MS. SMITH:  When they came forward.

THE COURT: Is that in the context of –

MS. SMITH:  The context of them saying something to somebody.

THE COURT: I understand.  So is that for the purpose of indicating that the statement – that their allegations are false?

MS. SMITH:  I'm not going to – I'm not going to say, "What you're saying is false."  I'm just going to talk about when they came forward, just the timing issues.

THE COURT: Okay.  Well, that sounds like – We'll let that come out. Sounds like that may have some effect on some of the testimony that comes in, who the State calls.  But we can cross that bridge when we come to it.

Transcript of January 12, 2021 Trial, Vol. I, pp. 11-13.

**{¶8}** Thereafter, the trial court conducted the voir dire and the jury was empaneled and sworn.

**{¶9}** Sergeant Sean Snead with the Delaware Police Department testified he was on routine patrol, at approximately 9:00 p.m. on September 3, 2017, when he was dispatched to Londontown Apartments, Apartment E, 317 Chelsea Street, Delaware, Delaware County, Ohio, on a sexual assault complaint.  He was met at the scene by

Sergeant Willauer. Sergeant Snead walked around the back of the apartment and observed about a dozen people outside. He described the people as "a little agitated and talking loud." Tr. Vol. I at 194. Sergeant Snead located Jane Doe, the complainant, and her mother, Kimberly Fleshman, and asked them to step away from the others so he could speak with them.

{¶10} After speaking with Jane Doe and Fleshman as well as two other individuals, Sergeant Snead determined the suspect was Appellant. The sergeant contacted Detective Daniel Madden and relayed the information he had received. Sergeant Snead had been advised Appellant would be leaving the apartment; therefore, Detective Madden planned to interview the individuals at a later time. Sergeant Snead did not speak with Appellant.

{¶11} Sergeant Adam Willauer testified he was also dispatched to Londontown Apartments on the evening of September 3, 2017. Sergeant Willauer arrived at the scene, recalling people were outside and there "appeared to be some sort of commotion. Obviously, some people were upset about something going on." Tr. Vol. I, 207. A female told Sergeant Willauer he needed to speak with the man, who was subsequently identified as Appellant, walking away from the residence. The sergeant stopped Appellant and spoke with him. Sergeant Willauer stayed with Appellant until he was permitted to leave the scene and then escorted him away from the apartment complex to avoid any potential issues.

{¶12} Prior to Jane Doe's testimony, the trial court again addressed the admission of prior consistent statements, stating:

* * * At this point, I'm not inclined to allow testimony on statements by the alleged victims . . . to other folks. That would be hearsay. I think I want to hear what the cross-examination is first and then on redirect if that's appropriate. Then we can get into those issues at that point.

I just – I didn't hear – I'm not 100 percent sure of the maze argument and what that is. But I guess I'd like to hear more before I feel like the door is opened on that issue. So redirect if that's appropriate. Okay.

Tr. Vol. II, 225-226.

{¶13} The state argued the testimony was not hearsay as such testimony would be elicited only to establish the fact the victims had previously disclosed sexual abuse, not the specific content of the disclosures. After conducting research, the trial court concluded "the assertion that is made in the statement is the fact of the sexual assault, and as long as it's fairly narrowly tailored to the disclosure and not the content of the statement, I don't think it's hearsay." Tr. Vol. II, 237. Counsel for Appellant put her objection on the record.

{¶14} The state called Jane Doe to the stand. Jane Doe, who was 20 years old at the time of the trial, testified her family moved into the Londontown Apartments when she was four years old and lived there until she was 16 years old. Jane Doe lived with her mother, her two younger brothers (Adam Doe and John Doe) and younger sister (M.M.), and Appellant, her mother's boyfriend. According to Jane Doe, Appellant acted as a step-father. Jane Doe indicated her mother worked "a lot." Jane Doe explained, because Appellant did not have stable job, he was around more often than her mother.

{¶15}  Jane Doe testified the first time she remembered Appellant sexually abusing her occurred when she was home from school one day because she was sick.  She was in elementary school at the time.  Appellant was the only person home with her at the time.  Jane Doe recalled Appellant placed his finger inside her vagina and she did not understand what he was doing.  Appellant also touched her chest, explaining she had not developed breasts at that point, and her buttocks.  Jane Doe stated she was in her bed when it happened and Appellant moved onto the bed with her. Appellant's abuse of Jane Doe continued until she was in high school.  The abuse most often occurred in the bedroom Jane Doe shared with her younger sister with Appellant using the guise of cleaning the room and turning on the vacuum to drown out any sound.

{¶16}  Jane Doe recalled Appellant would take her clothes off or tell her to remove her clothes then touch her breasts and nipples, her legs, her bottom, and her vagina. Appellant would remove his own clothing, sometimes just his pants and other times, his pants and shirt.  Jane Doe indicated Appellant's penis would be erect when he was touching her and he did ejaculate.  Appellant forced Jane Doe to masturbate him and perform oral sex upon him.  Appellant performed oral sex on Jane Doe and engaged in vaginal intercourse with her.  Appellant threatened to take Jane Doe's family away from her if she told anyone what he was doing to her.  Jane Doe did not think her mother or her siblings would believe her.  She was afraid of Appellant because he was bigger than she was.

{¶17}  Jane Doe remembered one specific incident when Appellant drove her to a nearby cemetery and engaged in vaginal intercourse with her.  While at the cemetery, Appellant engaged in sexual intercourse with her in the car and then outside the car, on

the ground. When Jane Doe was 15 or 16 years old, she disclosed to her friends Appellant was sexually abusing her. Following an argument and the arrival of the police on September 3, 2017, Jane Doe was taken to Children's Hospital in Columbus for an examination.

{¶18} Catherine Davis testified she worked at the Child Advocacy Center ("CAC") at Nationwide Children's Hospital as a trained forensic interviewer and mental health advocate, and conducted an interview of Jane Doe on September 13, 2017. Davis stated she acquired information about the case from Kimberly Fleshman, who had brought Jane Doe to CAC, immediately prior to the interview with Jane Doe. Davis' interview with Jane Doe was recorded. The recording was played for the jury with some redactions. Davis recalled Jane Doe was "a little bit anxious. . .[b]ut she seemed ready to just jump into it." Tr. Vol. II, 362-363. Davis explained, although Jane Doe went through "a range of being happy to evasive" during the interview, "there was nothing about [her] interview that stuck out to me as being unusual." Tr. Vol. II, 365. Davis did not note any "red flags" which would indicate Jane Doe had been coached.

{¶19} Melissa Scheiderer, who goes by her middle name Tamara, testified she lived at Londontown Apartments from her birth until she was 18 years old. Scheiderer met Jane Doe when the two girls were about 5 years old and starting elementary school, and remained friends while they were growing up. One February, Scheiderer and Jane Doe had a sleepover at Jane Doe's house to celebrate their birthdays, which were close in date. Scheiderer recalled Appellant coming into Jane Doe's bedroom and getting in bed with Jane Doe. When Appellant left, Scheiderer heard Jane Doe crying. At the end

of the summer that same year, Jane Doe told Scheiderer Appellant had done something inappropriate.  Scheiderer stated she and Jane Doe were 7 or 8 years old.

{¶20}  Julie Reisinger, Scheiderer's mother, testified Scheiderer slept over at Jane Doe's home on one occasion.  Reisinger recalled when Jane Doe and Scheiderer were in fourth or fifth grade Jane Doe personally told Reisinger about inappropriate behavior by Appellant.  Jane Doe lived with Reisinger for several months following the disclosure.  On cross-examination, Reisinger stated, following Jane Doe's disclosure, she contacted Children's Services and made Fleshman aware of the disclosure.

{¶21}  Adam Doe, who was 19 years old at the time of trial, testified he lived at Londontown Apartments with his family until he moved in with Tony Bennett in 2012, or 2013.  Although they were not biologically related, Adam Doe called Tony Bennett "Uncle Tony."  Adam Doe explained his mother had dated Tony Bennett's brother when he was "super young," and he and his siblings spent a lot of time with Tony.  Adam Doe recalled his mother worked both morning and afternoon shifts at a nearby Speedyway so she was "gone a lot."  Adam Doe stated Appellant moved into their apartment when he was 3 or 4 years old, and acted as a step-father to Adam Doe and his siblings.  Adam Doe noted Appellant never had a steady job while he lived with the family.

{¶22}  Adam Doe recalled, when his mother was at work and the family was cleaning, Appellant would be in Jane Doe's room with the door shut and "we weren't allowed to go in there."  Tr. Vol. III, 459.  Adam Doe added Appellant did not clean the other rooms in the house other than sweep the floors.

{¶23}  Adam Doe testified, "When we were little, we used to take clonidine, so we would be passed out all night long."  Tr. Vol. III, 460.  Adam Doe remembered being

asleep in the hallway when he was 3 or 4 years old and Appellant tried to put his penis in Adam Doe's mouth. Adam Doe pretended to be asleep while this was happening. When Adam Doe was around the same age, Appellant put his hands down the boy's pants and tried to grope his buttocks as the two played video games. Adam Doe disclosed Appellant's inappropriate touching to Tony Bennett when he (Adam Doe) was between the ages of 3 and 7. Even after he moved out of Londontown Apartments, Adam Doe only talked to Tony Bennett about Appellant's abuse.

**{¶24}** John Doe, who was 16 years old at the time of trial, testified he lived at Londontown Apartments until he was 14 years old. John Doe shared a bedroom with Adam Doe until Adam Doe moved in with Tony Bennett. Like his siblings, John Doe remembered his mother working a lot when he was growing up. John Doe stated Appellant and his mother were "together pretty much the whole time" the family lived at Londontown Apartments. Tr. Vol. III, 494. Appellant worked "side jobs mostly and helped out Mom any way he could." Tr. Vol. III, 495.

**{¶25}** John Doe recalled Appellant would clean Jane Doe's room "specifically with the vacuum, but leave the door closed." Tr. Vol. III, 496. Jane Doe would be in her room when Appellant was cleaning. John Doe noted, other than Jane Doe's room, Appellant "rarely" cleaned other parts of the house. John Doe could hear the vacuum, but could tell the vacuum was in the same spot. When John Doe was little and Appellant bathed him, Appellant would rub his penis with a loofah or hold the loofah on his penis for a longer than necessary amount of time. Appellant also touched John Doe's penis with his hand. John Doe also testified, when his mother was not home, Appellant would enter his bedroom, shut the shades, and force him to have anal intercourse and perform fellatio.

John Doe remembered when he was about 9 years old, Appellant and an unknown man entered his bedroom and took turns engaging in anal sex with him. Once he was 13 years old, John Doe avoided being at the house.

{¶26} John Doe feared Appellant would abuse his little sister, M.M., so he never disclosed the abuse. After Appellant was in custody, John Doe felt safe and told Tony Bennett about the abuse. On cross-examination, John Doe acknowledged he had fun times with Appellant while he was growing up.

{¶27} Scott Bennett, who is Tony Bennett's second cousin, testified he has known Jane Doe, Adam Doe, and John Doe for approximately 10 years and has lived with Tony Bennett for the same amount of time. Scott Bennett stated Jane Doe, Adam Doe, and John Doe spent "almost every weekend" with him and Tony Bennett. The Bennetts lived in Florida from 2012, through 2016, when they returned to Ohio. Scott Bennett explained they returned to Ohio for Adam Doe after Adam Doe contacted Tony Bennett and told him, "Uncle, I need your help." Tr. Vol. III, 578. Adam Doe lived with the Bennetts from the time he was 14 years old until he was 18 years old. Scott Bennett indicated John Doe, his younger sister, and his mother lived with the Bennetts for a period of time. John Doe and his younger sister lived with the Bennetts again between late December, 2019, and May, 2020. On separate occasions, Adam Doe and John Doe each told Scott Bennett Appellant had done inappropriate things to them. Scott Bennett recalled Appellant always hugging Jane Doe and observed Appellant caress Jane Doe's chest area when she was between 7 and 9 years old.

{¶28} Tony Bennett testified his brother had dated Fleshman for a short time prior to her relationship with Appellant. Tony Bennett became friendly with Fleshman and her

children and, as a result, the children knew him as "Uncle." When Adam Doe was 5 or 6 years old, he told Tony Bennett Appellant had done sexually inappropriate things to him. Tony Bennett made Fleshman aware of the disclosure. Over the years, Adam Doe made additional disclosures to Tony Bennett. In 2020, John Doe told Tony Bennett Appellant had done sexually inappropriate things to him.

{¶29} Detective Sergeant Michael Bolen of the Delaware Police Department testified he was assigned to the case involving Jane Doe on September 5, 2017. After being briefed by the detective on-call on September 3, 2017, Sergeant Bolen made a referral to Delaware County Job and Family Services. Sergeant Bolen observed the forensic interview of Jane Doe conducted by Cathy Davis at CAC on September 13, 2017. Based upon Jane Doe's interview, Sergeant Bolen spoke with Reisinger and Scheiderer. Sergeant Bolen noted Fleshman seemed less interested in pursuing the matter as time passed. Due to department restructuring in October, 2017, he and only one other detective were handling the entire caseload. Because Appellant was out of the home, the matter became a lower investigative priority. Sergeant Bolen was unable to locate Appellant and eventually reassigned the case to Detective Sean Franks in April, 2019.

{¶30} Shelly Pounds testified she lived next door to Fleshman and her family at Londontown Apartments. Pounds and Fleshman went to school together, but started to spend time together and become closer after Pounds moved into Londontown Apartments in 2015, or 2016. Prior to the September 3, 2017 incident, Jane Doe told Pounds about the inappropriate things Appellant had done to her. Pounds informed Fleshman of Jane Doe's disclosure.

**{¶31}** Detective Sean Franks of the Delaware Police Department testified Sergeant Bolen assigned the case to him in April, 2019. Shortly after being assigned the case, Detective Franks made contact with Jane Doe and Fleshman.  Appellant's whereabouts were unknown at that time.  Detective Franks obtained a warrant for Appellant's arrest in May 2019.  Appellant was arrest in August, 2019.  At the time of his arrest, Appellant was living with Fleshman, John Doe, and M.M. at the Hidden Lakes Campground in Mount Gilead, Ohio.  Detective Franks continued to investigate, speaking with Adam Doe, John Doe, Londontown Apartment neighbors, and members of Appellant's family.  Detective Franks also reviewed records from Job and Family Services in Delaware, Marion, and Union counties.

**{¶32}** After hearing all the evidence and deliberating, the jury found Appellant guilty of six counts of rape involving Jane Doe, two counts of gross sexual imposition involving Jane Doe, four counts of rape involving John Doe, and one count of gross sexual imposition involving John Doe.  The jury found Appellant not guilty of the one count of gross sexual imposition involving Adam Doe.  The trial court held a sentencing hearing on January 25, 2021.  The trial court sentenced Appellant to an aggregate term of imprisonment of 25 years to life.

**{¶33}** It is from his convictions and sentence Appellant appeals, raising the following assignments of error:


I. THE TRIAL COURT ERRED WHEN IT ALLOWED WITNESSES TO TESTIFY ABOUT THE VICTIMS' PRIOR CONSISTENT STATEMENTS WHEN THAT TESTIMONY WAS NOT CHALLENGED AS

A RECENT FABRICATION AND THE WITNESSES WERE NOT CALLED FOR REBUTTAL.  SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10A, OHIO CONSTITUTION; EVID. R. 801(D)(1)(B).

II. WILLIAM MEEKS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.  *STRICKLAND V. WASHINGTON*, 466 U.S. 668, 104 S.CT. 2052, 80 L.ED.2D 674 (1984).  SIXTH AND FOURTEENTH AMENDMENTS, UNITED STATES CONSTITUTION; ARTICLE I, SECTION 10 AND 16, OHIO CONSTITUTION.

I

**{¶34}** In his first assignment of error, Appellant asserts the trial court erred in allowing certain witnesses to testify about the victims' prior consistent statements as Appellant did not imply the victims were untruthful or fabricated their stories, and the witnesses were not called for rebuttal.

**{¶35}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).  Evid.R. 402 states that all relevant evidence is admissible.  "Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶36}** Specifically, Appellant contends the state's sole purpose in having Tamara Scheiderer, Julie Reisinger, Tony Bennett, Scott Bennett, and Shelly Pounds testify was to bolster and vouch for the victims' credibility. We disagree.

**{¶37}** Pursuant to Evid.R. 801(D)(1)(b), an out-of-court statement is not considered hearsay if "[t]he declarant testifies at trial * * * and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, 2013 WL 1709608, ¶ 16. Thus, the rule "permits the rehabilitation of a witness whose credibility has been attacked by an express or implied charge that [the witness] recently fabricated [his or her] story or falsified [his or her] testimony in response to improper motivation or undue influence." *Id.*; *State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, 2010 WL 1534121, ¶ 102.

**{¶38}** In order for the rule to apply, "the declarant must be subject to cross-examination and the statement must be offered to rebut an accusation that the declarant lied or was improperly influenced in [his or her] testimony." *State v. Williams*, 12th Dist. Butler No. CA2007-04-087, 2008-Ohio-3729, 2008 WL 2875008, ¶ 12. As a result, to be admissible, the prior consistent statement must have been made before the existence of any motive or influence to falsify testimony. *State v. English*, 12th Dist. Butler No. CA2013-03-048, 2014-Ohio-441, 2014 WL 539893, ¶ 36. "In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation."

*Smith* at ¶ 103, citing *State v. Grays*, 12th Dist. Madison No. CA2001–02–007, 2001 WL 1302551, *2 (Oct. 29, 2001).

**{¶39}** In *Motorists Mut. Ins. Co. v. Vance*, 21 Ohio App.3d 205, 486 N.E.2d 1206 (1985), the Tenth District Court of Appeals explained:

> What the rule permits is the rehabilitation of a witness whose credibility has been attacked by means of a charge that he recently fabricated his story or falsified his testimony in response to improper motivation or influence, by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive or influence to invent or falsify, as tending to rebut the charge.
>
> * * *
>
> Because the result of exclusion of prior consistent statements, where they are sought to be used for rebuttal purposes, would be to permit an implication of fabrication or falsification to stand without challenge, their admission should be favored to the extent that a generous view should be taken of the entire trial setting in order to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation.  *Id.* at 207

**{¶40}** While defense counsel carefully crafted her Opening Statement as well as her cross-examinations of the victims to avoid directly accusing the victims of lying,

defense counsel's strategy was to suggest the motive each of the victims had for fabricating allegations of sexual abuse by Appellant, thus implying the victims were lying.

**{¶41}** During the cross-examination of Jane Doe, defense counsel showed Jane Doe a photograph of herself with her mother and Appellant taken before a school dance. Jane Doe agreed she looked "very happy" in the photograph. Defense counsel's line of questioning implied Jane Doe had to be lying about the sexual abuse, suggesting it would be counterintuitive for her to be happy if Appellant was abusing her. Defense counsel also questioned Jane Doe about the argument she and Appellant had the evening of September 3, 2017, before police were called to the residence. Jane Doe could not recall the substance of the argument or whether it was "a really bad argument" or "a silly argument." Tr. Vol. II, 312-318. The questioning insinuated Jane Doe fabricated the abuse out of spite following this argument.

**{¶42}** Under the circumstances of this case, we find the cross-examination of Jane Doe amounted to an "implied charge" within the contemplation of the rule, as it constituted an attack upon Jane Doe's credibility by suggesting she had fabricated the allegations and had motive to do so. Accordingly, we find the trial court did not abuse its discretion in allowing the testimony of Scheiderer, Reisinger, and Pounds to rebut Appellant's implied charge against Jane Doe of recent fabrication or motive.

**{¶43}** We now turn to Appellant's argument as it relates to the trial court's admission of the testimony of Tony Bennett and Scott Bennett. During the cross-examination of John Doe, defense counsel showed John Doe photographs of himself and Appellant going fishing. John Doe acknowledged "[t]here were some good times." Tr. Vol. III, 541. This line of questioning implied John Doe was lying about the sexual abuse

as it would be counterintuitive for him to be happy to be fishing with Appellant if Appellant abused him. Defense counsel questioned John Doe about Tony Bennett and Scott Bennett pursuing legal custody of John Doe and M.M., and pushed John Doe about his desire to live with Tony Bennett and Scott Bennett. John Doe indicated he had his own room at the Bennett house and he had fun being there. John Doe also admitted the rules at the Bennett house were more lenient. He added he never went hungry when he was with the Bennetts. This line of questioning suggested John Doe was improperly influenced or motivated him to lie in order to live with Tony Bennett and Scott Bennett.

{¶44} Again, we find, under the circumstances of this case, the cross-examination of John Doe amounted to an "implied charge" within the contemplation of the rule, as it constituted an attack upon John Doe's credibility by suggesting he was improperly influenced or motivated to fabricate the allegations of abuse by Tony Bennett and Scott Bennett, whom defense counsel attempted to establish wanted legal custody solely for the welfare benefits. Accordingly, we find the trial court did not abuse its discretion in allowing the testimony of Tony Bennett and Scott Bennett to rebut Appellant's implied charge against John Doe.

{¶45} With respect to the trial court's admitting the testimony of Tony Bennett and Scott Bennett regarding disclosures Adam Doe made to each of them, we find any error in the admission of the testimony to be harmless as Appellant was acquitted of the one count of gross sexual imposition involving Adam Doe.

{¶46} Additionally, we find any error in the admission of the testimony of Scheiderer, Reisinger, Tony Bennett, Scott Bennett, and Pounds to be harmless. "The erroneous admission of hearsay evidence is harmless if additional information, separate

and apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove." *State v. Patterson,* 5th Dist. No. 02-COA-041, 2003-Ohio-4673, at ¶ 4 (Citation omitted). Because Jane Doe, Adam Doe, and John Doe each testified as to what Appellant did to her/him, whom they individually told, and what she/he did or did not do in the aftermath, and defense counsel cross-examined them, the testimony of Scheiderer, Reisinger, Tony Bennett, Scott Bennett, and Pounds was cumulative. The testimony of Jane Doe and John Doe was sufficient to support Appellant's convictions. We find Appellant has failed to demonstrate he was prejudiced by the admission of the victims' prior statements and the trial court did not abuse its discretion in admitting the testimony.

**{¶47}** Appellant's first assignment of error is overruled.

II

**{¶48}** In his second assignment of error, Appellant raises a claim of ineffective assistance of counsel. Appellant asserts trial counsel was ineffective for 1) failing to file a motion to dismiss based upon pre-trial delay, 2) failing to request separate trials for each victim, and 3) failing to file a dismiss based upon a violation of Appellant's speedy trial rights.

*Standard of Review*

**{¶49}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668,

104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process the proceedings cannot be relied upon as having produced a just result. *Id.* In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

{¶50} In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.

*Pre-indictment Delay*

{¶51} In *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, the Ohio Supreme Court held "when unjustifiable preindictment delay causes actual prejudice to a defendant's right to a fair trial despite the state's initiating of prosecution within the

statutorily defined limitations period, the Due Process Clause affords the defendant additional protection." *Id.* at ¶ 11.  Preindictment delay between the commission of the offense and a defendant's indictment violates due process only when: (1) it is unjustifiable and (2) causes actual prejudice. *Id.* at ¶ 12, citing *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus. There is a "firmly established burden-shifting framework for analyzing a due-process claim based on preindictment delay. Once a defendant presents evidence of actual prejudice, the burden shifts to the state to produce evidence of a justifiable reason for the delay." *Id.* at ¶ 13. In other words, "unjustifiable delay does not violate due process unless it results in actual prejudice." *Id.* at ¶ 16.

**{¶52}** "[P]roof of actual prejudice, alone, will not automatically validate a due process claim" as "the prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." *Luck,* supra at 154 (Citation omitted)*.* Thus, once a defendant establishes "actual prejudice", the burden then shifts to the state to produce evidence of a justifiable reason for the delay. *Id.* Thereafter, the due process inquiry involves a balancing test by the court, weighing the reasons for the delay against the prejudice to the defendant, in light of the length of the delay. *State v. Walls,* 96 Ohio St.3d 437, 2002–Ohio–5059, 775 N.E.2d 829, ¶ 51.

**{¶53}** The defendant may not rely on speculation or vague assertions of prejudice. Proof of actual prejudice must be specific, particularized, and non-speculative. Therefore, in order to establish actual prejudice, the defendant must demonstrate the exculpatory value of the evidence of which he was deprived due to the delay. *State v. Thomas,* 8th Dist. Cuyahoga No. 101202, 2015–Ohio–415, ¶ 11.  The defendant must show "how lost

witnesses and physical evidence would have proven the defendant's asserted defense."
*State v. Smith,* 8th Dist. Cuyahoga No. 100501, 2014–Ohio–3034, ¶ 26, citing *State v. Davis,* 7th Dist. Mahoning No. 05 MA 235, 2007–Ohio–7216, ¶ 17. "Without proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution." *Id.*

{¶54} In his Brief to this Court, Appellant makes the blanket assertion he was prejudiced by the delay.  Appellant references times during the trial when witnesses were unable to recall specific memories or individuals with whom they had spoken.  Much of Appellant's argument focuses on Jane Doe and her inability to recall her specific age or grade level at the time of the events she described.  Appellant notes Jane Doe was unable to recall the substance of the argument between herself and Appellant on September 3, 2017, which resulted in the police responding to their home.  Appellant adds Adam Doe and John Doe had similar "gaps in memory" regarding where and when they were living with different people and to whom they spoke.  Appellant concludes, "All of this might have been mitigated if the State had prosecuted Mr. Meeks in a timely manner."  Brief of Appellant at 9.

{¶55} We find Appellant's claim of actual prejudice is speculative.  Appellant has failed to demonstrate he was deprived of any evidence or the exculpatory value of that evidence due to the delay. Appellant has not shown how the inability of certain witnesses to recall exact dates, names, and places deprived him of an ability to assert a defense. In fact, during the cross-examination of Jane Doe, Adam Doe, and John Doe, defense counsel used the witnesses' inability to recall specifics to attack their credibility.  Further,

we have reviewed the entire trial transcript and do not find any of the witnesses' gaps in memory to be so pervasive as to call into question the jury's verdict.

**{¶56}** Because Appellant failed to establish actual prejudice, this Court is not required to consider the reasons for the delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 107.

**{¶57}** Appellant has failed to demonstrate there was a reasonable probability a motion to dismiss based upon the pre-indictment delay would have been granted had it been timely filed; therefore, he is unable to establish a claim for ineffective assistance of counsel.

*Separate Trials*

**{¶58}**  Joinder of offenses is governed by Crim. R. 8(A), which states offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or part of a common scheme or course of criminal conduct. Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to witnesses. *See, State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). Joinder is appropriate where the evidence is interlocking and the jury is capable of segregating the proof required for each offense. *State v. Czajka*, 101 Ohio App.3d 564, 577–578, 656 N.E.2d 9 (1995).

**{¶59}** "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661

(1992), citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 158–159, 524 N.E.2d 476, 481–482; *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964). "If the evidence of other crimes would be admissible at separate trials, any 'prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials,' and a court need not inquire further." *Id.*, citing *Drew v. United States,* 331 F.2d at 90.

**{¶60}** We need not address whether the evidence of the offenses against one victim would be admissible at Appellant's trials on the offenses involving the other victims, and vice versa, as the evidence of each offense was simple and distinct. "Evidence is 'simple and direct' if the jury is capable of readily separating the proof required for each offense, if the evidence is unlikely to confuse jurors, if the evidence is straightforward, and if there is little danger that the jury would 'improperly consider testimony on one offense as corroborative of the other.' " *State v. Freeland,* 4th Dist. Ross No. 12CA003352, 2015-Ohio-3410, ¶ 14, citing *State v. Skatzes,* 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 34. Therefore, "a defendant does not suffer prejudice from joinder of offenses when the offenses charged in an indictment are 'simple and distinct,' when '[t]he factual situation of each crime was easy to understand and was capable of segregation,['] and when '[t]he crimes involved different victims, different factual situations, and different witnesses.' " *Freeland* at ¶ 14, quoting *State v. Clifford*, 135 Ohio App.3d 207, 212, 733 N.E.2d 621 (1st Dist. 1999).

**{¶61}** Each victim testified separately and the state introduced evidence of each distinct crime. The jury clearly was able to separate the evidence relative to each victim as the jury found Appellant guilty of the counts involving Jane Doe and John Doe, but

acquitted him on the single count involving Adam Doe. Based upon this verdict, it is clear the jury did not confuse the evidence relating to the separate charges.

**{¶62}** Because joinder was proper in this matter, Appellant cannot establish he was prejudiced by the trial counsel's failure to move for separate trials. We find Appellant has failed in his burden to demonstrate a reasonable probability that, but for counsel's failure to request separate trials, the result of the proceeding would have been different.

*Speedy Trial*

**{¶63}** R.C. 2945.71(C)(2) requires "[a] person against whom a charge of felony is pending * * * be brought to trial within two hundred seventy days after his arrest." R.C. 2945.71(E) provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." "The statutory speedy trial period begins to run on the date the defendant has been arrested; however, the date of arrest is not counted when calculating speedy trial time." *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, 2015 WL 4043007, ¶ 21.

**{¶64}** Appellant was arrested on August 16, 2019[1], and was held in the Delaware County Jail until his trial on January 12, 2021. At first blush, it appears Appellant was not brought to trial within the time limits set forth in R.C. 2945.71(C).

**{¶65}** A defendant establishes a prima facie case for discharge once he demonstrates he has not been brought for trial within the time limits set forth in R.C. 2945.71. *State v. Ashbrook*, 5th Dist. Licking No. 06 CA 158, 2007-Ohio-4635, 2007 WL 2582869, ¶ 49, citing *State v. Butcher*, 27 Ohio St.3d 28, 30–31, 500 N.E.2d 1368 (1986).

---

[1] The state uses August 9, 2019, as the date of Appellant's arrest. In his Brief, Appellant states he was arrested on August 16, 2019. Brief of Appellant at 11. The docket indicates Appellant was arrested on August 16, 2019. Accordingly, we shall use August 16, 2019, as the date of Appellant's arrest.

When a defendant has established he was tried outside speedy-trial time limits, the burden shifts to the state to show the time limit was extended under R.C. 2945.72. *Id.* at ¶ 31. If the state fails to produce evidence in rebuttal under R.C. 2945.72, then discharge pursuant to R.C. 2945.73(B) is required. *Id.*

{¶66} "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." *State v. Riley*, 162 Ohio App.3d 730, 2005-Ohio-4337, 834 N.E.2d 887, ¶ 19.

{¶67} R.C. 2945.72, which sets forth the provisions tolling the speedy trial parameters, provides, in pertinent part:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

* * *

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

* * *

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion * * *

**{¶68}** We calculate Appellant's time as follows:

**{¶69}** Between August 17, 2019, and September 29, 2019, the day on which Appellant filed his motion to suppress, 132 days (44 days times 3) are charged to the state. Time was tolled pursuant to R.C. 2945.72(E) between the filing of the motion to suppress and November 6, 2019, the day on which Appellant filed his motion for a competency evaluation. Time remained tolled pursuant to R.C. 2945.72(B) between the filing of the motion for competency evaluation and February 7, 2020, the day on which the trial court scheduled a competency hearing and a hearing on motion to suppress.

**{¶70}** The trial court sua sponte continued the February 7, 2020 hearing, until March 16, 2020, due to the trial of another criminal case. R.C. 2945.72(H) "contemplates continuances resulting from the court's docket pressures." *State v. Tillman*, 2d Dist. Clark No. 06CA0118, 2008-Ohio-2060, ¶ 17, citing *State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d

1095 (1976).   We find the length of the trial court's continuances to be reasonable. Accordingly, Appellant's speedy trial time remained tolled.  Upon its own motion, the trial court again continued the competency hearing and suppression hearing from March 16, 2020, to April 29, 2020, in order for the hearing to be conduct via videoconference.  We find the speedy trial time continued to be tolled pursuant to R.C. 2945.72(H).  The trial court's judgment entry reflects the continuance was reasonable in both purpose and length. *State v. Martin,* 56 Ohio St.2d 289, 293, 384 N.E.2d 239 (1978).

**{¶71}**  On April 28, 2020, the state and Appellant filed a joint motion for continuance of the April 29, 2020 hearing, due to broadcasting issues over Zoom with the recorded interviews between Appellant and Detective Sean Franks, which were the focus of the suppression hearing.  The parties agreed, "Speedy trial remains tolled due to Defendant's pending motions [sic] for competency evaluation and motions [sic] to suppress.  April 28, 2020 Motion to Continue Hearing on Motion to Suppress and Hearing on Motion for Competency Evaluation to May 13, 2020 at 2, unpaginated.  The joint motion for continuance continued to toll Appellant's speedy trial time.  See, *State v. Pyles*, 7th Dist. Mahoning No. 13 MA 22, 2015-Ohio-5594 (Citation omitted).

**{¶72}**  Via Judgment Entry filed May 14, 2020, the trial court found Appellant competent to stand trial.  Time remained tolled as the trial court had not yet ruled on Appellant's motion to suppress.  Following the May 13, 2020 hearing, the trial court provided the parties with the opportunity to file memoranda contra or in support of the motion to suppress.  The state filed its post hearing response on May 14, 2020.  Appellant filed his brief in support of his motion to suppress on May 21, 2020.  On July 9, 2020, the

trial court filed its 38-page judgment entry granting, in part, Appellant's motion to suppress.

**{¶73}** The Ohio Supreme Court has held a trial court does not have "unbridled discretion concerning the amount of time it takes to rule on a defense motion. * * * A strict adherence to the spirit of the speedy trial statutes requires a trial judge, in the sound exercise of his judicial discretion, to rule on these motions in as expeditious a manner as possible." *State v. Martin* (1978), 56 Ohio St.2d 289, 297, 384 N.E.2d 239. Stated otherwise, "the extension of time to rule on a defendant's motion to suppress is subject to a requirement of reasonableness." *State v. Arrizola* (1992), 79 Ohio App.3d 72, 76, 606 N.E.2d 1020 (1992). A balancing test is necessary in which a court should weigh: "[the][l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *State v. Santini*, 144 Ohio App.3d 396, 404, 760 N.E.2d 442 (2001), quoting *Barker v. Wingo* (1972), 407 U.S. 514, 530, 92 S.Ct. 2182. A court should also specifically consider the nature of the motion filed and the timing of said motion in assessing whether a delay is reasonable. *Id.*  We find the delay necessitated by the trial court's ruling on Appellant's motion to suppress was reasonable given the nature of the motion and the potential consequences.

**{¶74}** Time began to run again on July 9, 2020, and ran until July 13, 2020, when Appellant filed a motion to continue.  Thus, 15 days (5 days times 3) are charged to the state.  The state dismissed the indictment in case no. 19 CR I 08 0580 on August 14, 2020.  The speedy trial clock restarted upon the filing and service of the superseding indictment in case no. 20 CR I 08 0516 on August 13, 2020.

**{¶75}**   In *State v. Baker*, 78 Ohio St. 3d 108, 1997-Ohio-229, the Ohio Supreme Court held:

[I]n issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment.  *Id.* at syllabus.

**{¶76}**   The subsequent indictment in case no. 20 CR I 08 0516 included "additional criminal charges [arising] from facts different from the original charges" and "the state did not know of these facts at the time of the initial indictment."  *Id.*  The indictment in case no. 20 CR I 08 0516 contains new charges and concerned two additional victims.  Investigators did not learn of the abuse Appellant perpetrated upon Adam Doe and John Doe until mid-summer 2020.  Because the additional criminal charges arise from facts distinct from those supporting the initial indictment and the state was unaware of such facts at that time of the filing of the initial indictment, we find the state was not required to bring Appellant to trial within the same statutory period as the initial indictment under R.C. 2945.71.

**{¶77}**   We find Appellant was brought to trial on the superseding indictment within the statutory speedy trial requirements.  Appellant filed motions to continue on September 1, 2020, and October 26, 2020.  Appellant's October 26, 2020 motion to continue was necessitated by Appellant's motions to determine the competency of the victims.  Pursuant to R.C. 2945.72(E) and (H), time was tolled during the period between the filing

of the September 1, 2020 motion to continue and the rescheduled trial date of November 3, 2020, the period between Appellant's filing motions to determine the victims' competency on October 23, 2020, and the trial court's judgment entry ruling on the same, and the period between Appellant's October 26, 2020 motion to continue and the rescheduled trial date of January 4, 2021.

{¶78}  Because we find Appellant was not denied his right to a speedy trial, we find his trial counsel was not ineffective for failing to file a motion to dismiss on speedy trial grounds.

{¶79}  Based upon the foregoing, Appellant's second assignment of error is overruled.

{¶80}  The judgment of the Delaware County Court of Common Pleas is affirmed.


By: Hoffman, P.J.

Wise, John, J.  and

Delaney, J. concur